**STATE of Minnesota, Respondent,**

v.

**Alan ROSENTHAL, Appellant.**

No. 46538.

Supreme Court of Minnesota.

July 14, 1978.

C. Paul Jones, Public Defender, Robert Oliphant, Spec. Asst. Public Defender, for appellant.

Warren Spannaus, Atty. Gen., Thomas L. Fabel, Deputy Atty. Gen., John Daniels, Jr., Spec. Asst. Atty. Gen., St. Paul, Wallace Sieh, County Atty., Austin, for respondent.

PER CURIAM.

This is an appeal from Mower County District Court wherein on November 17, 1975, defendant was convicted by a jury of the crime of possession of more than 1.5 ounces of marijuana. He was sentenced to be committed to the Commissioner of Corrections for a term not to exceed 3 years, which sentence was stayed pending appeal. The stay of execution of sentence was vacated on October 12, 1976, because of violations of the conditions of the stay, and defendant was sent to the State Reformatory for Men at St. Cloud, Minnesota. We reverse.

The principal issue raised by defendant has to do with the sufficiency of the affidavit which was the basis for the search warrant used to discover the contraband material in this case.[1] A warrant to search the residence and the automobile of the defendant was issued by a county court judge on July 11, 1975. All of the information which was presented to the magistrate in support of the application for the war-

1. In a desk in defendant's bedroom, the officers found what proved to be marijuana, also pipes, roach clips, and $1,980 in cash. The total weight of the marijuana was 7.6 ounces.

rant was contained in the following affidavit:

"Deputy Glenn Young informed affiant that:

"Informant known personally by Young and known to be reliable, informed that Allen (sic) Rosenthal was offering about one pound of marijuana for sale at a party attended by informer, also that Allen Rosenthal was known by the informer to be selling marijuana.

"Second informer known personally by Young and known to be reliable informed that Allen Rosenthal was growing marijuana in planter in front of his house; Young found this to be true."

Defendant contends that this affidavit fails to meet the standards set by the United States Supreme Court in *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). In that case, the court said:

"* * * Although an affidavit may be based on hearsay information and need not reflect the direct personal observations of the affiant, *Jones v. United States,* 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697, 78 A.L.R.2d 233, the magistrate must be informed of some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, and some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed, see *Rugendorf v. United States,* 376 U.S. 528, 84 S.Ct. 825, 11 L.Ed.2d 887, was 'credible' or his information 'reliable.' "

This is based on the principle enunciated in *Johnson v. United States,* 333 U.S. 10, 14, 68 S.Ct. 367, 92 L.Ed. 436, 440 (1948), in the oft-quoted statement by Mr. Justice Jackson:

"* * * The point of the Fourth Amendment, which often is not grasped by zealous officers, is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence. Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime."

In *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), where the court reversed a conviction involving an affidavit insufficient to justify the issuance of a search warrant, a case which the court used to explicate further the principles of *Aguilar,* the court said:

"* * * In the absence of a statement detailing the manner in which the information was gathered, it is especially important that the tip describe the accused's criminal activity in sufficient detail that the magistrate may know that he is relying on something more substantial than a casual rumor circulating in the underworld or an accusation based merely on an individual's general reputation."

Measured by *Aguilar* and *Spinelli,* the affidavit in the instant case falls short of acceptable standards. Both informers are said to be "reliable," but there is no indication as to how the officer knew that they were reliable. As to the first informer, there is no information as to when the "party" was held, or how the informer knew that the defendant was offering a pound of marijuana for sale, or how the informer knew that defendant was selling marijuana generally. As to the second informer, no details are given as to the marijuana which defendant was allegedly growing; "Young found this to be true" is purely a conclusion on the part of the officer without any explanation as to how or why he found it to be true.[2]

---

**2.** The affidavit is not only fatally insufficient to substantiate the *reliability* of the information but completely silent on its *timeliness.* Other jurisdictions have consistently held that "A combination of undated, conclusory information from an undated general allegation of personal observation by the affiant, with no other reasonably specific clues to the time of their happening, is inadequate." *Rosencranz v. United States,* 356 F.2d 310 (1st Cir. 1966); See, *Walker v. State,* 49 Ala.App. 741, 275 So.2d 724 (1973); *People v. Padilla,* 182 Colo. 101, 511 P.2d 480 (1973); *Pierson v. State,* 338 A.2d 571 (Del.1975); *McMiken v. State,* 127

It may be said arguably that sufficient facts were brought out at the omnibus hearings to validate the issuance of the warrant, although even that is doubtful. In any event, it is not the information possessed by the applying officer, but the information known to the magistrate at the time he issues the warrant that controls. This must be contained in the affidavit or in sworn testimony given in addition to the affidavit. *State v. Campbell,* 281 Minn. 1, 161 N.W.2d 47 (1968). In this case, there was nothing but the affidavit. See, also, *State v. Burch,* 284 Minn. 300, 170 N.W.2d 543 (1969).

We have examined the other issues raised by defendant and have found them to be without merit. However, in view of the defects in the procedures connected with the issuance of the search warrant, we hold that the evidence obtained in the search pursuant to the warrant must be suppressed.

Reversed and remanded for a new trial.

Ga.App. 66, 192 S.E.2d 716 (1972); *State v. Oropeza,* 97 Idaho 387, 545 P.2d 475 (1976); *State v. Loder,* 381 A.2d 290 (Me.1978); *Williams v. State,* 503 P.2d 568 (Okl.Cr.App.1972). Because we reverse the defendant's conviction for the reasons stated above, we do not discuss this point beyond expressing our strong disapproval of the omission of time from an affidavit in support of a search warrant application.