**UNITED STATES of America, Appellee,**

v.

**Charles GILL a/k/a Papa Gill, Appellant.**

**No. 80–1095.**

United States Court of Appeals,
Eighth Circuit.

Submitted May 21, 1980.

Decided June 26, 1980.

Donald L. Wolff, Wolff & Frankel, Clayton, Mo., for appellant.

Michael W. Reap, Asst. U.S. Atty., St. Louis, Mo., for appellee; Robert D. Kingsland, U.S. Atty., St. Louis, Mo., on brief.

Before BRIGHT, HENLEY and McMILLIAN, Circuit Judges.

McMILLIAN, Circuit Judge.

Charles H. Gill appeals from a judgment entered in the district court[1] finding him guilty of one count of possession of a Schedule II controlled substance (cocaine) with intent to distribute in violation of 21 U.S.C. § 841(a)(1). Appellant was sentenced to a term of twenty-five years imprisonment, plus a special parole term of ten years, and a $20,000 fine under the sentence enhancement provisions of 21 U.S.C. §§ 841(b)(1)(A), 851. For reversal appellant argues that the district court erred (1) in imposing an enhanced sentence, (2) in denying his motion to suppress, and (3) in denying his motion for disclosure of the identity of a confidential informant. For the reasons discussed below, we affirm the judgment of the district court.

We note that this case was tried to the district court on written stipulations. Appellant does not challenge the sufficiency of the evidence. On July 21, 1979, following a

---

1. The Honorable H. Kenneth Wangelin, Chief Judge, United States District Court for the Eastern District of Missouri.

narcotics investigation, two City of St. Louis police officers obtained a search warrant for premises described in the warrant as "2922 University, a two story brick residence with an attic, used as a single family dwelling with two front doors (2922 and 2922A)."[2] The police officers searched both 2922 and 2922A University. Nothing was found in 2922 University. Inside 2922A University the officers observed appellant trying to push something under a bed. A briefcase was recovered from under the bed; inside the briefcase was approximately five ounces of a powdery substance subsequently identified as cocaine and $28,000. The officers also found narcotics paraphernalia used in weighing and packaging drugs for distribution.[3] Appellant was arrested and advised of his rights. At this point appellant made several incriminating remarks. The district court found appellant guilty of possession of cocaine with intent to distribute. This appeal followed.

I. Sentencing

Appellant argues that the district court improperly imposed an enhanced sentence under 21 U.S.C. §§ 841(b)(1)(A), 851. The maximum penalty for a violation of 21 U.S.C. § 841(a)(1) is fifteen years imprisonment and/or a fine of $25,000, plus a minimum special parole term of three years. The penalty maximum doubles for persons with one or more prior narcotics convictions. 21 U.S.C. § 841(b)(1)(A). The procedure for establishing prior convictions and thus invoking the enhanced sentencing provisions is set forth in 21 U.S.C. § 851, which provides in part:

> No person who stands convicted of an offense under this part shall be sentenced to increased punishment by reason of one or more prior convictions, *unless before trial* . . . the United States attorney files an information with the court . . . stating in writing the previous convictions to be relied upon.

21 U.S.C. § 851(a)(1) (emphasis added). Appellant contends that his trial began on November 5, 1979. Because the government did not file the information for enhancement of sentence until November 6, 1979, appellant argues the information was not filed before trial as required by 21 U.S.C. § 851. Therefore, appellant concludes the district court improperly imposed an enhanced sentence.

■ We agree with appellant that § 851 "is phrased in mandatory language. The words '[n]o person . . . shall be sentenced to increased punishment . . . unless . . .' restrict the court's authority to impose enhanced sentences to cases where the information is filed with the court and served on the defendant before trial." *United States v. Noland*, 495 F.2d 529, 533 (5th Cir.), *cert. denied*, 419 U.S. 966, 95 S.Ct. 228, 42 L.Ed.2d 181 (1974). In the present case, however, we conclude that appellant's trial did not begin until December 3, 1979. Therefore, the government's information for enhancement of sentence was filed before trial.

■ We are not unsympathetic to appellant's position, which is based in part upon the district court's statement on November 5 that "For various purposes the Court is regarding today as a start of a, quote, trial of this matter."[4] The fact that this was a bench-tried case, submitted on written stipulations, also makes it difficult to deter-

---

**2.** The building in question is a single structure of two stories. Each floor constitutes a separate residence; the upstairs is 2922A, the downstairs, 2922. It is a two-family building. As noted by appellant, the residences have separate doors, mailing addresses, telephones and utilities. Appellant's mother owns the building and lives with another son in 2922; appellant lives upstairs and pays rent and his own utilities.

**3.** The officers found strainers, measuring spoons, a scale, fourteen packages of mannite

(a cutting agent), 3500 one-gram vials, and 2 two-gram vials. The officers also found numerous firearms and a large amount of property, some in original packaging, believed to be stolen.

**4.** *United States v. Gill*, No. 79-95-CR(1) (E.D. Mo.) (transcript of oral proceedings, Nov. 5, 1979, at 6). We regard the government's incorrect reference to November 3 as the filing date of the substitute information as a mistake.

mine when the trial began. We note, however, that on December 3 the district court approved appellant's waiver of jury trial, received the written stipulations and took the cause under submission. A criminal trial conducted without a jury cannot proceed until the district court approves the defendant's waiver of jury trial, with the consent of the government. Rule 23(a), Fed.R.Crim.P.; *see, e. g., Dixon v. United States*, 110 U.S.App.D.C. 275, 292 F.2d 768, 769 (1961). Further we draw support from the general rule in the context of double jeopardy that the trial in a non-jury case begins with the introduction of evidence, that is, the submission of the written stipulations in the present case. *E. g., Serfass v. United States*, 420 U.S. 377, 388, 95 S.Ct. 1055, 1062, 43 L.Ed.2d 265 (1975); *United States v. Bullock*, 579 F.2d 1116, 1118 (8th Cir.) (per curiam), *cert. denied*, 439 U.S. 967, 99 S.Ct. 456, 58 L.Ed.2d 425 (1978).

## II. Motion to Suppress

█ Appellant argues that the district court erroneously denied his motion to suppress evidence seized during the execution of the search warrant. First, appellant argues that the warrant failed to describe the place to be searched with sufficient particularity. Specifically, appellant contends the warrant description does not include 2922A University. The incriminating evidence was found in 2922A University. As noted, the warrant described the place to be searched as "2922 University, a two story brick residence with an attic, used as a single family dwelling with two front doors (2922 and 2922A)." Using a variation of the "single residence specificity" requirement developed in cases involving multiple residential units within a building, *e. g., United States v. Dorsey*, 192 U.S.App.D.C. 313, 591 F.2d 922, 928–30 (1978) (rooming house); *United States v. Davis*, 557 F.2d 1239, 1247–48 (8th Cir.) (large house subdivided into apartments), *cert. denied*, 434 U.S. 971, 98 S.Ct. 523, 54 L.Ed.2d 461 (1977); *United States v. Hinton*, 219 F.2d 324, 325–26 (7th Cir. 1955) (apartment building), appellant contends the scope of the warrant should be limited to the resi-

dence identified by the street address, that is, to 2922 University only. We must disagree.

The test for determining the sufficiency of the description of the place to be searched is whether the place to be searched is described with sufficient particularity as to enable the executing officer to locate and identify the premises with reasonable effort, and whether there is any reasonable probability that another premise might be mistakenly searched. *United States v. Gitcho*, 601 F.2d 369, 371 (8th Cir.) (citations omitted), *cert. denied*, 444 U.S. 871, 100 S.Ct. 148, 62 L.Ed.2d 96 (1979).

The traditional rule is that the generality of a warrant cannot be cured by the specificity of the affidavit which supports it because, due to the fundamental distinction between the two, the affidavit is neither part of the warrant nor available for defining the scope of the warrant. . . . However, where the affidavit is incorporated into the warrant, it has been held that the warrant may properly be construed with reference to the affidavit for purposes of sustaining the particularity of the premises to be searched, provided that a) the affidavit accompanies the warrant, and b) the warrant uses suitable words of reference which incorporate the affidavit therein.

*United States v. Johnson*, 541 F.2d 1311, 1315 (8th Cir. 1976) (other citations omitted), *citing Moore v. United States*, 149 U.S.App.D.C. 150, 461 F.2d 1236, 1238 (1972); *see also* 2 W. LaFave, Search & Seizure: A Treatise on the Fourth Amendment § 4.5(a), at 73–74 (1978) (hereinafter LaFave Treatise). In the present case the affidavits were physically attached to the warrant and incorporated by suitable words of reference.

Reviewing the warrant together with the affidavits, we conclude the warrant description was sufficient and reasonably included 2922A University. The case is a close one. The street address given in the warrant is less inclusive than the architectural description of the premises ("a two story brick

residence with an attic") and the affidavits requested a search warrant for 2922 University. Nonetheless, the street address and architectural description were correct and accurate. The officers executing the warrant were the affiants and thus personally knew which premises were intended to be searched. The officers had placed the building under surveillance as part of their investigation. In addition, the affidavits contain information from a reliable informant that drug transactions were made from both front doors and that drugs were kept on both floors of the building. In sum, we are persuaded that "[t]he premises which were intended to be searched were, in fact, those actually searched." *United States v. Gitcho, supra,* 601 F.2d at 372 (citations omitted).

We distinguish those cases cited by appellant on the issue of single residence specificity. Single residence specificity cases typically involve a search warrant which contains a broad description covering several residential units. *See, e. g., United States v. Dorsey, supra,* 591 F.2d at 929–30 (cases cited therein); [5] 2 LaFave Treatise, *supra,* § 4.5(b). "Federal courts long have held that police officers, before they constitutionally may search a separate residential unit within an apartment building, must have probable cause to do so that is specifically related to that unit." *United States v. Dorsey, supra,* 591 F.2d at 928, *citing United States v. Hinton, supra,* 219 F.2d at 325–26. Thus, at issue in these cases is whether the police knew, or with reasonable investigation could have found out, that the building described in the warrant contained multiple residences, a fact which would place the police "under a responsibility to pinpoint the offending unit or units." *United States v. Dorsey, supra,* 591 F.2d at 929.

In the present case, however, the description in the search warrant was inconsistent rather than too general; the specific street address was less inclusive than the building description. To fall within the characteristics of a typical single residence specificity case, the warrant description would have referred to the entire building and the target of the search would have been one of several residences. Under those circumstances, assuming there was probable cause shown to search only one of the several residences, *see* discussion *infra,* at issue would have been the reasonableness of the police officers' belief that the building was in fact a single residence.[6] Moreover, further assuming the reasonableness of the police officers' belief that the building was a single residence, any defect in the description in the warrant in our hypothetical may be cured by the attachment and incorporation of more specific affidavits. *See Moore v. United States, supra,* 149 U.S.App.D.C. at 151–52, 461 F.2d at 1237–38 (warrant which failed to specify one of two apartments on "2nd Floor" of specified apartment building was upheld because attached affidavit referred to apartment " # 7").

■ Appellant also argues that there was no probable cause to support the issuance of a search warrant for 2922*A* University. Appellant argues that the building in question is a multiple residential unit and that the affidavits established probable cause, based upon the information from the informant and police surveillance, for 2922 University only. We disagree. Both affidavits contain substantially the same information: a confidential informant, known personally by the affiant and who had proved to be reliable on several past occasions by providing information leading to several narcotics convictions, had recently purchased cocaine on numerous occasions from appellant and an individual believed to be appellant's brother from both front doors of the building; the informant was personally familiar

---

5. For example, the building at issue in *United States v. Davis* and *United States v. Dorsey* were large houses which had been subdivided into apartments. In each case there were few "external indicia of multiple occupancy." *United States v. Dorsey, supra,* 591 F.2d at 930.

6. In my view, in the hypothetical fact situation, the police officers' belief that the building was in fact a single family residence would have been unreasonable in light of the outward signs of multiple occupancy (two front doors, separate addresses and mailboxes).

with and able to recognize cocaine; two days before the date of the affidavit the informant saw several vials of cocaine on a table in 2922 University; and the informant knew the drugs were "moved between the floors of the building to avoid a robbery." Although the affidavits refer to police observation of persons known to have narcotics convictions "enter the premises through the front door" without specifying 2922 or 2922A, the information from the informant clearly implicated *both* residences. This information from a reliable informant, corroborated partially by police observation, meets the tests for probable cause set forth in the landmark cases of *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969).

■ Appellant also argues that the affidavits contained an intentional or reckless misrepresentation of a material fact, citing *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). Appellant argues that the affidavits erroneously referred to the building as a single family residence and that this reference was necessary to the finding of probable cause. We disagree. As noted by the magistrate [7] in his report, the affidavits contain two statements referring to the building as a single family residence: the informant states the building is "used as a single family dwelling" and the affiants describe the building as "the two story, with an attic, brick constructed single family residence located at 2922 University." Even assuming appellant made a substantial preliminary showing of intentional or reckless misrepresentation, the characterization of the building as a single family residence was not necessary to the finding of probable cause. *See United States v. House*, 604 F.2d 1135, 1138–39 & n.5 (8th Cir. 1979), *cert. denied*, —— U.S.

——, 100 S.Ct. 1320, 63 L.Ed.2d 764 (1980), *citing Franks v. Delaware, supra*, 438 U.S. at 155, 98 S.Ct. at 2676. The informant clearly implicated both floors and both front doors of the building. *See* discussion *supra*.

III. Motion to Disclose Identity of Informant

■ Appellant argues that the district court erroneously denied his motion to disclose the identity of the informant. Appellant sought disclosure of the identity of the informant in order to determine, in connection with appellant's *Franks* challenge of the warrant affidavits, whether the affiants intentionally or recklessly misrepresented the building as a single family residence. We have already rejected appellant's *Franks* challenge on the ground that the alleged misrepresentation was not necessary to the finding of probable cause. In light of that finding, there is no longer any reason for disclosure in the *Franks* context.[8] Moreover, we note that the Supreme Court in *Franks* did not decide whether a reviewing court must ever require the disclosure of the identity of an informant once a substantial preliminary showing of falsity has been made. 438 U.S. at 170, 98 S.Ct. at 2684.

Accordingly, the judgment of the district court is affirmed.

---

7. The Honorable William S. Bahn, United States Magistrate.

8. On appeal appellant did not argue that disclosure of the identity of the informant was required because the informant was a material defense witness. *See Roviaro v. United States*, 353 U.S. 53, 60–61, 77 S.Ct. 623, 627–628, 1 L.Ed.2d 639 (1957); *United States v. Barnes*,

486 F.2d 776, 778 (8th Cir. 1973). In any case, it would appear from the facts in the present case that the informant was a "mere tipster." *See, e. g., United States v. House, supra*, 604 F.2d at 1140; *United States v. Davis, supra*, 557 F.2d at 1248–49, *citing Rugendorf v. United States*, 376 U.S. 528, 534–35, 84 S.Ct. 825, 829, 11 L.Ed.2d 887 (1964).